UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.   4:24-CR-00121-JAR-NCC |
| v. | ) |
| | ) |
| CRAIG SPIEGEL, M.D., | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES OF AMERICA'S MOTION FOR
<u>STAY OF ORDER OF RELEASE AND TO REVOKE THE ORDER OF RELEASE</u>**

Comes now the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Amy E. Sestric, Assistant United States Attorney for said District, and moves the Court for a stay and revocation of a release order. In support of this motion, the Government states as follows.

**Procedural History**

On March 7, 2024, defendant Craig Spiegel, M.D. ("Spiegel") was charged by complaint with illegally distributing controlled substances in violation of 21 U.S.C. § 841(a)(1). (Compl., ECF No. 1.) The Government moved to detain Spiegel on the basis that no condition or set of conditions could reasonably assure the safety of the community or the appear of the defendant as required. (Mot. for Pretrial Detention & Hearing, ECF No. 6.) The Government supplemented its detention motion on March 11, 2024 after a concerned citizen came forward about Spiegel's risk of flight. (Supp. to the United States' Motion for Pretrial Detention & Hearing, ECF No. 14.)

The Court held a detention hearing on March 11, 2024 at which the parties argued their respective positions. Subsequently, on March 13, 2024, a federal grand jury indicted Spiegel with 17 counts of illegal distribution of controlled substances and seven counts of making false

statements related to health care matters. (*See* Indictment, ECF No. 20, ¶¶ 29, 43.) In addition, Spiegel and his co-defendant April Bingham were charged with one count of conspiracy to distribute controlled substances. (*Id.* ¶¶ 31-36.)

On March 14, 2024, the Court denied the Government's request for detention but allowed the United States "at least one day to . . . consider asking the Honorable John A. Ross, the United States District Court Judge with original jurisdiction over this case, to review" the decision denying detention. (Mem. & Order, ECF No. 22, at 6.) This Motion followed.

### Motion for Continued Stay of Order of Release

Both the district court and the magistrate judge have the authority to stay a release order pending review. *See, e.g.*, *United States v. Brigham*, 569 F.3d 220, 230 (5th Cir. 2009) (collecting cases where district courts have stayed pretrial release orders); *United States v. Salman*, 241 F. Supp. 3d 1288, 1289-90 (M.D. Fla. 2017) (both the district court and magistrate judge stayed a release order "to allow the Government to seek review"). "The factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (addressing stay of release pending review of a district court's final judgment granting habeas corpus relief). "A stay of a release order can only be issued if the Government shows either 'a likelihood of success on the merits' or can at least 'demonstrate a substantial case on the merits and [ ] other factors militate against release.'" *United States v. Salazar-Andujo*, 599 F. Supp. 3d 491, 496 (W.D. Tex. 2022) (quoting *Woodfox v. Cain*, 305 F. App'x 179, 181 (5th Cir. 2008)).

Spiegel's order of release has been stayed "at least one day" since the order denying detention was docketed on March 14, 2024. Spiegel's bond execution hearing is set to take place on March 18, 2024.

The United States requests a further stay of release until the motion to revoke the order of release can be decided by the court of original jurisdiction in the Eastern District of Missouri. For the reasons set forth below, there is a strong likelihood that the Government will succeed on the merits, and release of Spiegel pending a ruling on the merits will substantially injure the interested parties in the proceeding and the public because Spiegel is a danger to the community and a substantial flight risk.

## Motion for Revocation of Order of Release

"If a person is ordered released by a magistrate judge . . . (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . . ." 18 U.S.C. § 3145(a)(1). This Court reviews an order of release under a *de novo* standard. *See United States v. Maull*, 773 F.2d 1479, 1481, 1485 (8th Cir. 1995) (finding district court "had the duty under the Bail Reform Act to deny release" after finding that no conditions of release could assure appearance). "The power to decide must finally reside in the Article III court" and this "substantial responsibility" must not "be diminished by the earlier action of a magistrate." *Id.* at 1486.

"If, after a hearing . . . , the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of . . . the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e). In a case where, as here, there is a probable cause finding that the defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed under

3

the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* ("CSA"), a rebuttable presumption arises that no condition or combination of conditions can reasonably assure the appearance of the defendant or the safety of the community. 18 U.S.C. § 3142(e)(3)(A).

If the defendant is able to rebut the presumption against detention, the Bail Reform Act instructs that the following factors should be considered in considering whether any combination of conditions will reasonably assure the appearance of the defendant and the safety of the community: (1) the nature and circumstances of the offense charged, including whether the offense involves a controlled substance; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)-(4).

### 1. Spiegel Has Not—and Cannot—Rebut the Presumption in Favor of Detention in this Case.

As set forth in the Indictment, the grand jury charged Spiegel with, among other things, 17 counts of illegal distribution of controlled substances and one count of conspiracy to illegally distribute controlled substances. The controlled substances distributed by Spiegel include schedule II controlled substances, which, of all of the schedules of controlled substances that may be legally prescribed, have the highest potential for abuse. 21 U.S.C. § 812(b). As a result, if convicted, Spiegel is facing a maximum of twenty years of imprisonment for each illegal distribution charge (as well as the conspiracy). 21 U.S.C. §§ 841(b)(1)(C), 846. Thus, a rebuttable presumption arises that no combination of conditions could reasonably assure Spiegel's appearance or the safety of the community. 18 U.S.C. § 3142(e)(3)(a).

The Memorandum and Order denying detention found that Spiegel had rebutted the presumption of detention in this case. (Mem. & Order, ECF No. 22, at 5.) At the hearing, Spiegel argued that he has ties to the community, has known of the pending allegations against him for

4

some time leading up to the indictment and still did not flee, and has substantial physical health issues requiring him to take at least 15 pills per day. Spiegel further argued he has no criminal history and has closed his practice and surrendered his medical license.

The Government submits that Spiegel's proffered information does not overcome the existing presumption of detention in this case, which involves 17 separate counts of illegal drug distribution case, a drug trafficking conspiracy, and a probable cause finding that Spiegel engaged in a criminal course of conduct for at least ten years. The information submitted by Spiegel is particularly insufficient to overcome the presumption in this case where the surrounding circumstances of the alleged offenses are exceptionally disturbing. As the grand jury found, Spiegel used his medical license and Drug Enforcement Administration ("DEA") registration to distribute controlled substances to women—many of whom he met because he was their treating pediatrician when they were only girls—in exchange for sexual acts and photographs. He carried on this conduct even though he knew that many of these women had dangerous substance abuse disorders and were perilously close to overdosing. He carried on in his crimes even after he learned that one woman did, in fact, overdose and die.

In short, this is precisely the type of case that the Bail Reform Act contemplated when it categorized drug distribution allegations that carry ten or more years of imprisonment as cases in which a rebuttable presumption of detention arises. The information supplied by Spiegel did not overcome this presumption.

    2.    **Even in the Absence of a Presumption in Favor of Detention, Spiegel Should Be Detained Because He Is a Danger to the Community and A Substantial Flight Risk.**

Even in the absence of a presumption of detention, consideration of the Bail Reform Act's § 3142(g) factors makes clear that no combination of conditions will reasonable assure Spiegel appearance or the safety of the community.

      **a.    The Nature and Circumstances of the Offense Charged Are Extraordinarily Serious.**

Spiegel is facing extraordinarily serious charges. The Grand Jury found that Spiegel engaged in a dangerous illegal prescribing practice for at least ten years, exerting pressure on vulnerable victims with substance abuse disorders to engage in sexual acts exchange for drugs. The Grand Jury further found that Spiegel conspired with Bingham, prescribing her controlled substances in exchange for sexual acts even though he knew she was selling the prescribed drugs for cash. (*Id.* ¶ 34.) Spiegel and Bingham are also charged with putting prescriptions for controlled substances in the names of other individuals (such as Bingham's relatives and friends) to avoid detection and to take advantage of those individuals' prescription insurance benefits. (*Id.* ¶ 35.) The statutory maximum for each CSA violation charged is up to 20 years of imprisonment. 21 U.S.C. § 841(b)(1)(C).

The seriousness of the offense is underscored by the inherently dangerous and reckless nature of the conduct, which has caused real and tragic harm. Controlled substances are highly regulated and require a DEA registration for good reason: they are categorized as such due to their potential for abuse and risk of misuse. 21 U.S.C. § 812(b). Nonetheless, Spiegel continued to prescribe to individuals who he knew were either suffering from severe drug abuse disorders or were diverting the drugs they received from him to others—sometimes even to children. (Indictment, ECF No. 20, ¶ 24.) In one instance, Spiegel continued to prescribe controlled substances to an individual, N.L, in exchange for sexual acts even though he knew she was

6

perilously close to overdosing. (Indictment, ECF No. 20, ¶ 26.) She did, in fact, die of an overdose at only 40 years of age.[1] (*Id.*)

### b. The Weight of the Evidence Is Overwhelming.

The weight of the evidence in this case is immense. Based on investigative efforts to date, the Government believes that Spiegel illegally distributed controlled substances to *at least* 25 individuals (probably more) who are either females to whom he issued prescriptions for no legitimate medical purpose in exchange for sexual favors, or other adults to whom he issued prescriptions for no legitimate medical purpose in exchange for cash. Examining those 25 individuals alone, the United States is aware of the following evidence: thousands of text messages to or from Spiegel that substantiate the criminal "tit-for-tat" nature of the prescriptions he issued, in that they expressly discuss sexual exchanges for Spiegel's issuance of prescriptions; over 1,200 individual prescriptions for controlled substances that should not have been issued to the 25 known individuals; and over 73,000 controlled substance pills that Spiegel illegally distributed to the 25 known individuals.

In addition, Spiegel sat for a voluntary recorded interview with investigators during which he admitted to providing certain women with controlled substances in exchange for sexual acts. The Government is also in possession of incriminating health care records, numerous witness statements, and prescription claims data confirming a pattern of prescribing dangerous cocktails

---

[1] The Memorandum and Order denying detention states that the Government concedes no charges were brought for this overdose death. (Mem. & Order, ECF No. 22 at 2-3.) It is true that, as of the date of this filing, Spiegel is not charged with directly causing N.L.'s death through the precise drugs he prescribed to her. However, the investigation is ongoing. In any event, the charges as alleged, which contend Spiegel continued to prescribe potent narcotics, stimulants, and other controlled substances to individuals who he knew were at high risk of overdose, are still extremely serious.

7

of controlled substances that are known in the medical community to sought out for recreational use. The weight of the evidence is simply overwhelming.

      c.    **Spiegel's History and Characteristics Underscore His Blatant Willingness to Thwart the Law and His Substantial Risk of Flight.**

           i.    **Spiegel's Characteristics Show He Is a Poor Candidate For Bond, the Success of Which Depends on a Defendant's Willingness to Comply.**

Spiegel's characteristics show he is a poor candidate for bond. Any conditions of bond are only as meaningful as a defendant's willingness to comply with them. Spiegel has shown, time and time again, that he does not care about rules, regulations, or the law.

Spiegel continued to illegally distribute controlled substances after his clinic was searched pursuant to a premises warrant by federal investigators, during which he sat for an extensive interview and was expressly questioned about the dangerous conduct in which he was engaged. He even continued to illegally distribute controlled substances after being invited to the United States Attorney's Office to hear about the problematic, criminal nature of his prescribing practices. Moreover, when the United States first approached Spiegel, it repeatedly requested, through Spiegel's counsel, that he relinquish his DEA registration as a showing of good faith. Despite months of repeated requests by the Government, Spiegel has refused to voluntarily surrender his DEA registration and still possesses his registration at the time of this filing.[2] Moreover, as alleged in the Indictment, Spiegel's text messages make clear he knew of the illegal nature of his conduct,

---

[2] That Spiegel is suddenly willing to surrender his registration to secure his release does not effectively mitigate the danger he poses to the community. Spiegel has had a practice of prescribing controlled substances to family members—a well known "red flag" of drug diversion—such that he could easily have access to controlled substances in his home or around his family.

8

and continued anyway, making statements such as, "The government is very intrusive lately," and, "The DEA is watching more carefully." (Indictment, ECF No. 20, ¶ 28.)

In addition, in August 2023, after the search of Spiegel's clinic and the meeting with Spiegel that took place at the United States Attorney's Office, one witness advised investigators that she—an adult female who had received controlled substance prescriptions from Spiegel in the past—reached out to Spiegel via text. In response, Spiegel asked the witness if she was talking to the "feds." After the witness answered, "No," Spiegel replied, "Good." Thus, Spiegel shows witness tampering tendencies, the repercussions of which would only be exacerbated if released on bond.

In short, Spiegel is a poor candidate for bond, because he has repeatedly shown his willingness to knowingly violate the law, even after having been advised of the criminal nature of his conduct, and has provided substantial indication that he would fail to take seriously bond conditions imposed by this Court.

### ii. Spiegel's Characteristics Show He Is a Substantial Flight Risk

In recent months, Spiegel has made a variety of decisions that underscore concerns about his risk of flight. According to investigative efforts, Spiegel has not showed up to his pediatric clinic in about six months (though his name is still on the door to his medical suite). He also recently purchased a home that Zillow estimates to be valued at approximately $562,100; his prior Creve Coeur house (which Zillow estimates to be valued at over $1.2 million) has a realtor's lockbox on the door and appears to be empty on the inside. The severe difference in home values suggests Spiegel could be liquidating assets to increase his mobility, particularly since, according to the bail report, the new home is titled solely in the name of Spiegel's wife. (Pretrial Servs.

9

Report, ECF No. 13, at 1.) Combined with the apparent close of his medical practice, Spiegel's ties to the community appear to be dwindling.

Additionally, since this case was originally charged, a witness has come forward with information further underscoring that Spiegel is a substantial flight risk. Specifically, Megan Daugherty, M.D., fellow physician with Washington University's Division of Pediatric Critical Care Medicine who met Spiegel in 2019 in connection with her medical training, had lunch with Spiegel recently, on February 29, 2024. While at lunch, Spiegel informed Dr. Daugherty that he had closed his practice, which came as a surprise to her; while she was training with Spiegel in 2022, Spiegel had indicated that he intended to practice for another seven years, and that he had a difficult time envisioning retirement. Spiegel also informed Dr. Daugherty that he was having a hard time financially, and that he was hoping to quickly sell his Creve Coeur home. In Dr. Daugherty's opinion, Spiegel seemed depressed. He relayed to her that, although he had always wanted grandchildren, he told his daughter that if she never gave him grandchildren, she should not feel any guilt. At the end of Spiegel's lunch with Dr. Daugherty, he took a picture with her; the only other time he had done that was when he was sad that Dr. Daugherty was leaving his practice in 2022. Further, Spiegel did not make any future plans with Dr. Daugherty, which was unusual for him. In short, Spiegel appeared to be acting fatalistically less than two weeks ago, on February 29, 2024.

While at lunch with Dr. Daugherty, Spiegel also talked about Israel, including a relative that he has in Israel with whom he maintains regular contact.[3] Although Dr. Daugherty could not recall precisely what Spiegel said, she recalled he brought up the topic of passports. Relatedly,

---

[3] According to Spiegel's bail report, Spiegel has visited Israel multiple times with his mother to visit family. (Pretrial Servs. Report, ECF No. 13, at 2.)

10

over the years that Dr. Daugherty has known Spiegel, the two have frequently discussed politics, including politics specific to Israel. One of the topics they have at various times discussed is the notion that Israel is viewed, by some, to be a "safe haven" for sex offenders. Dr. Daugherty and Spiegel have exchanged news articles about this topic. More specifically, Spiegel and Dr. Daugherty have discussed that, according to some news media outlets, the "Law of Return" is an Israeli policy allowing any Jewish person without a criminal record to move to Israel and automatically gain citizenship. The articles that Spiegel and Dr. Daugherty have discussed talk about a pattern of sex offenders using the Law of Return to flee to Israel before they are convicted and then go several years before being successfully (if ever) extradited.[4]

Finally, as the bail report notes, both Spiegel and his wife indicated that the idea of serving a prison sentence brings the thought of suicide to his mind. (Pretrial Servs. Report, ECF No. 13, at 4.) That Spiegel has thoughts that could make him a danger to himself is just one additional reason that there are no conditions of bond that could reasonably assure his safety and his appearance as required. *See United States v. Workman*, 680 F. App'x 699, 702-03 (10th 2017).

### d. Spiegel's Release Would Pose a Serious Danger to the Community.

---

[4] The Memorandum and Order denying detention states that the Court would not detain Spiegel merely because he "is Jewish and may have previously discussed the idea of one day seeking Israeli citizenship." (Mem. & Order, ECF No. 22, at 6.) The Government's request to have Spiegel detained has nothing to do with his religion. It does, however, relate to the fact that Spiegel has ties to Israel and, based on Dr. Daugherty's statements, every reason to believe he would be welcomed as a citizen there if he fled the United States prior to conviction.

Nor, for that matter, does the Government's request to have Spiegel detained relate to his level of education or the simple fact, without any additional context, that he is a doctor. It does, however, relate to the fact that Spiegel enjoyed the public trust of having the great privilege of distributing controlled substances for legitimate medical purposes and that he violated that trust to the detriment of the safety of the community.

11

Based on the rampant illegal distribution alleged in the Indictment, Spiegel is a danger to the community. However, Spiegel's dangerousness to the community is not limited to his prescribing practices. One woman whom Spiegel was prescribing controlled substances advised that he became physically violent with her by forcing her to perform oral sex on him in a public restroom—the door to which he locked once inside with her. Individual was a minor patient who complained to state authorities that Spiegel was inappropriate with her during a medical examination.

Text messages sent from Spiegel to various women also substantiate that many of his interactions were not consensual. For example, he told one individual, "You owe me big time" after issuing her a prescription; he told another woman to "[w]ear less layers" at their scheduled meeting; he told yet another individual that he sent her "prescriptions assuming [she] would hold up [her] end;" and he guilted N.L., the individual who ultimately died of an overdose, "You promise much, but seldom follow through. I am not sure why you waste your breath promising anything."

As the grand jury found, many of the women to whom Spiegel illegally prescribed controlled substances were individuals he met when they were children and he was their treating pediatrician. Concerns about Spiegel's conduct around children have increased dramatically over the past few days. On March 14, 2024, counsel for the United States was advised by the St. Louis County prosecutor's office has been contacted by the Bridgeton Police Department that, since the publicity of Spiegel's federal charges, additional child and adult victims have come forward. As a result, the St. Louis County prosecutor's office is expecting the Bridgeton Police to apply for three to five additional sex crime charges against Spiegel.

**CONCLUSION**

For all of the foregoing reasons, the United States respectfully requests that the Court stay and, ultimately, revoke the order denying the United States' request for detention (ECF No. 22).

Date:   March 15, 2024

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

*/s/ Amy E. Sestric*
AMY E. SESTRIC, #66219MO
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2024, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all Counsel of Record.

*/s/ Amy E. Sestric*
AMY E. SESTRIC, #66219MO
Assistant United States Attorney