UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Case No.: 4:24CR121 JAR/NCC | |
| | ) | |
| CRAIG A. SPIEGEL, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT**
**OF HIS MOTION TO SUPPRESS EVIDENCE**

Respectfully submitted,

ROSENBLUM, SCHWARTZ, FRY & JOHNSON, P.C.

By:    /s/ *T.J. Matthes*
       T.J. MATTHES, #67563MO
       Attorney for Defendant
       120 South Central Avenue, Suite 130
       Clayton, Missouri 63105
       (314) 862-4332/Facsimile 862-8050
       tmatthes@rsfjlaw.com

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................3

FACTS ................................................................................................................................4

STANDARDS .....................................................................................................................6

ARGUMENT ......................................................................................................................6

   I.    THE AUGUST 2022 SEARCH WAS UNLAWFUL ................................................6

      1.   Facial Insufficiency of the 2022 Affidavit ....................................................6

      A.   Lack of Indicia of Child Molestation .............................................................7

      B.   Lack of a Nexus to the Evidence Sought ........................................................9

      C.   Unreliability of Affidavit.................................................................................13

      2.  Overbreadth of the 2022 Affidavit. .................................................................14

   II.    THE AUGUST 2022 ARREST OF SPIEGEL WAS UNLAWFUL ......................16

      1.   Warrantless Arrest on Private Property Under Authority of Defective Warrant ...........16

      2.   Lack of Probable Cause ...................................................................................17

   III.    THE SUBSEQUENT SEIZURE OF SPIEGEL'S CELL PHONE WAS UNLAWFUL....19

   IV.    THE APRIL 2023 SEARCH WAS UNLAWFUL .................................................21

      1.   The April 2023 Search Constitutes Fruit of the Poisonous Tree .....................21

      2.   Overbreadth of the 2023 Warrant. ..................................................................22

   V.    SPIEGEL'S CONSENT DID NOT CURE THE TAINT OF THE ILLEGALITY .............23

      1.   Spiegel's Coerced Consent was not Voluntary ...............................................23

      2.   Even if Voluntary, Spiegel's Consent was not Attenuated..............................25

      A.   Temporal Proximity.........................................................................................25

      B.   Intervening Circumstances ..............................................................................27

      C.   Purpose and Flagrancy.....................................................................................29

CONCLUSION.................................................................................................30

## <u>INTRODUCTION</u>

The 25-count Indictment in this matter charges Defendant Craig Spiegel with illegal distribution of controlled substances, conspiracy to distribute controlled substances, and making false statements related to health care matters, all of which relate to prescriptions he wrote as a medical doctor. However, the investigation and discovery of all evidence related to those charges arose from a false allegation of sexual abuse made against Spiegel in 2022. The Bridgeton Police Department's investigation into that claim eventually led to the matters presently at issue before this Court.

On August 30, 2022, Bridgeton investigators conducted an unlawful search and arrest at Spiegel's office. The search was unlawful because the affidavit used to obtain the warrant is facially insufficient to establish probable cause and overbroad in scope. In addition, because Spiegel was arrested at his private office during the unlawful search without an arrest warrant or probable cause, his arrest constitutes an unlawful seizure. Spiegel is, therefore, entitled to suppression of all evidence obtained from that unlawful search and arrest.

Bridgeton investigators seized Spiegel's cell phone from his person while arresting him during the August 2022 search; however, it was not returned to him with his other personal property once released from custody, constituting an additional warrantless seizure in violation of his Fourth Amendment rights, and requiring suppression of all evidence obtained from it.

Months later, DEA investigators used the foregoing illegally obtained evidence in their application for another search warrant for Spiegel's office and phone in April 2023. The warrant was issued, but all evidence obtained therefrom, including Spiegel's statements during an interrogation as the search unfolded, should be suppressed as poisonous fruit of the initial Fourth Amendment violations.

# **FACTS[1]**

On August 30, 2022, a search warrant was issued for "[t]he doctor's office of Craig A. Spiegel, located at 12255 DePaul Drive Suite 380 Bridgeton, MO 63044[.]" *See* **Ex. A** (August 2022 Search Warrant) ("2022 Warrant"). The warrant authorized investigators to search Spiegel's office for evidence of the crime of "Child Molestation 1st Degree[.]" *Id*. The evidence to be searched for included the following: "Digital imaging of office to include examination rooms, audio/video/photographic recording devices, scented bottles of lotion, records associated with patient/victim, A.G." *Id*.

To obtain the 2022 Warrant, Detective Bradley Cash ("Det. Cash") of the Bridgeton Police Department submitted an affidavit setting forth the following facts, verbatim:

1. On 8-29-2022, victim, AG disclosed the following to a CAC Forensic Interviewer:
2. In the month of August 2021, AG, responded to Dr. Craig Spiegel's office with her uncle for an examination. Spiegel told the uncle and siblings to leave the room while he conducted AG's examination.
3. After both uncle and siblings left, Dr. Spiegel, closed the door and AG believed he locked the door. Dr. Spiegel untied and removed his shoes. Spiegel then removed all contents in his pockets and placed them on or near the exam room counter.
4. According to AG, Dr. Spiegel, took her shoes off then obtained a tube of scented lotion from or near the counter then used the lotion to massage AG's feet.
5. Dr. Spiegel began to rub AG's vagina in a circular motion on the exterior of her clothing.
6. Dr. Spiegel informed AG to remove her clothes which AG refused. Dr. Spiegel then held her down with his body weight and held his hand over AG's mouth then removed her pants and underwear.
7. Dr. Spiegel began rubbing AG's inner thighs with his hands and his fingers rubbed against AG's vagina.
8. Dr. Spiegel began kissing AG's thighs, lips, and chest.
9. Dr. Spiegel forced AG's closed fisted hand down his pants which AG stated she felt his belly, pubic hair and felt his penis become erect while stating, "You know you like this, don't lie"
10. An unknown subject knocked on the exam door, which caused Spiegel to stop.

---

[1] Unless otherwise noted, the facts cited herein are derived from the Government's discovery and are referenced by Bates stamp pagination, *e.g.*, Bates, 44. Of course, Spiegel assumes, but does not concede, their truth for purposes of this Motion and reserves the right to controvert them or offer conflicting evidence at any hearing or trial.

Dr. Spiegel told AG to hide under the exam table.

11. Dr. Spiegel left the office, at which time AG put her clothes back on and once Dr. Spiegel returned to the room and checked under the table, AG left the room and returned to her family.

12. During this incident, Dr. Spiegel told AG the following:
    a. "You're gonna like this in the end"
    b. You're gonna have my kids"
    c. "What position you play in bed"
    d. Called the exam a "Private check up"
    e. "I'm going to eat you up"

13. AG did not disclose this to anyone until a similar incident happened to her mother by Dr. Spiegel in 03/2022.

14. Per the attached written consent form, AG's mother has given my department consent to obtain her childrens' medical records from Dr. Spiegel's office.

**Ex. B** (August 2022 Search Warrant Affidavit) ("2022 Affidavit").

During the execution of the 2022 Warrant, the investigators captured numerous photographs and seized several items from Spiegel's office. *See* **Ex. C** (2022 Warrant Inventory). Also during the search, Spiegel was placed under arrest for the crime of Child Molestation in the First Degree, and certain personal property was seized from his person, including his cell phone. *See* Bates, 259, 271. Spiegel was subsequently transported to the St. Charles City Police Department,[2] where he was held in custody on a 24-hour hold. *Id*.

Once released, the investigators who executed the search warrant provided Spiegel a ride to work, during which the following occurred, per an officer's report:

> Detectives informed Spiegel that we had seized his cell phone in which he inquired if Detectives were looking for 'Child Porn'. Spiegel informed Detectives there was no child pornography on the phone and agreed to give consent to Detectives to search his cell phone.

Bates, 271. Spiegel signed a consent form. *See* **Ex. D** (Consent Form). A subsequent search of the phone revealed incriminating texts and other communications between Spiegel and his patients.

---

[2] Although Bridgeton is a municipality in St. Louis County, it is counsel for Defendant's understanding it has contracted with St. Charles City jail to house arrestees Bridgeton police wish to hold overnight.

Several months later, on April 19, 2023, DEA investigators obtained another search warrant for Spiegel's office, as well as his cell phone. In their warrant application-affidavit, the investigators repeatedly cite to the evidence obtained from the August 2022 search, arrest, and subsequent cell phone search in support, including numerous photographs taken from the office search, which are attached to the affidavit. *See* **Ex. E** (April 2023 Search Warrant Application) ("2023 Affidavit"). During the execution of that warrant (the "2023 Warrant"), Spiegel made incriminating statements in response to interrogation by law enforcement. From the search, police obtained further incriminating evidence from Spiegel's office and his cell phone.

## STANDARDS

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Davis v. United States,* 564 U.S. 229, 236 (2011) (quoting U.S. Const. Amend. IV). "Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule and, therefore, 'cannot be used in a criminal proceeding against the victim of the illegal search and seizure.'" *United States v. Riesselman,* 646 F.3d 1072, 1078 (8th Cir. 2011) (quoting *United States v. Calandra,* 414 U.S. 338, 347 (1974)). Moreover, "any evidence stemming from" a Fourth Amendment violation should be suppressed as "fruits" of that violation, "so long as [the defendant] is able to first prove a 'factual nexus between the constitutional violation and the challenged evidence.'" *Riesselman*, 646 F.3d at 1079.

## ARGUMENT

## I.    THE AUGUST 2022 SEARCH WAS UNLAWFUL

1. **The August 2022 search of Spiegel's office was unlawful because the search warrant affidavit is facially insufficient to establish probable cause.**

Affidavits for search warrants are reviewed using the "totality of circumstances" analysis to determine whether probable cause exists for the search. *Illinois v. Gates*, 462 U.S. 213, 238

(1983). That is, "whether, given all the circumstances set forth in the affidavit before [the magistrate], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. In addition, "[p]robable cause must exist when a warrant is issued, not merely at some earlier time." *United States v. LaMorie*, 100 F.3d 547, 554 (8th Cir. 1996). "A warrant becomes stale if the information supporting the warrant is not 'sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search.'" *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016) (quoting *United States v. Brewer*, 588 F.3d 1165, 1170 (8th Cir. 2009)).

Importantly, on review of affidavit sufficiency, the Court's inquiry is limited exclusively to "***only that information which is found within the four corners of the affidavit***" as applied to relevant Fourth Amendment caselaw. *United States v. Etheridge,* 165 F.3d 655, 656 (8th Cir. 1999) (quoting *United States v. Gladney,* 48 F.3d 309, 312 (8th Cir. 1995)) (emphasis added). As such, the surrounding context and other circumstances preceding the search warrant application are irrelevant to the present analysis. *See id*.

A.  Lack of Indicia of Child Molestation

First, as noted, the warrant application purported to seek evidence for the crime of "Child Molestation 1st Degree[.]" *See* **Ex. B** (2022 Affidavit). In Missouri, Child Molestation in the First Degree occurs when a person "subjects another person who is less than fourteen years of age to sexual contact . . . ." Mo. Rev. Stat. § 566.067. However, the 2022 Affidavit is devoid of any information showing that the alleged victim, A.G., was underage at the time of the described conduct, let alone less than fourteen years old. *See* **Ex. B** (2022 Affidavit). Indeed, there is nothing contained therein stating her age, date of birth, or any approximation of how old she was or may

have been. Rather, as far as a reader of the affidavit can tell, A.G. was merely another generic patient of Dr. Spiegel, whose practice could have included (and did include) adult patients.

In order to reach the conclusion that evidence of child molestation would be found in Spiegel's office, the reader must make the critical assumption that A.G. was under the age of fourteen based on nothing more than the crime named by the affiant, which is insufficient to establish probable cause, without more. *See McCray v. State of Ill.*, 386 U.S. 300, 311 (1967) (noting that a search warrant affidavit must supply the underlying factual information to support the affiant's conclusions); *United States v. Summage*, 481 F.3d 1075, 1077–78 (8th Cir. 2007) ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.").

Aside from the hollow title of the crime named by Det. Cash, the only other conceivable indications of A.G.'s age in the Affidavit are that she was accompanied by her uncle and siblings at Spiegel's office, that her statements were made to a "CAC Forensic Interviewer",[3] and that A.G.'s mother gave officers her consent "to obtain her childrens' medical records"—all of which could be the case whether or not A.G. was under the age of fourteen. By contrast, weighing against those loose indications are Spiegel's purported statements to A.G., that "You're gonna have my kids'", which suggests A.G. was at least child-bearing age, and the statement or question, "'What position you play in bed'", which suggests that A.G. was old enough to have had prior sexual experience with "positions" in bed. *See* **Ex. B** (2022 Affidavit). In any case, such vague, attenuated

---

[3] "CAC" presumably refers to a Child Advocacy Center, although that information is not provided in the Affidavit. Additionally, Child Advocacy Centers commonly provide forensic services to individuals through 18 years of age and certain older individuals. *See* http://www.stlouiscac.org/faq.html (providing forensic services for ages 3 through 18); *see also* https://www.cornerhousemn.org/the-latest/were-listening-an-introduction-to-cornerhouses-adult-interviewing-project (conducting forensic CAC interviews with individuals ages 2 through 18 and adults with atypical abilities); *see also* https://www.mercy.net/practice/cooper-anthony-mercy-child-advocacy-center-hot-springs/.

information contained in the Affidavit is hardly indicative of A.G.'s age, if at all, much less sufficient to give rise to suspicion of child molestation to support the search warrant's issuance.

Accordingly, absent any showing that A.G. was underage at the time of the described conduct, the 2022 Affidavit is facially insufficient to establish that probable cause exists to believe evidence of child molestation would be contained in Spiegel's office.

## B. Lack of a Nexus to the Evidence Sought

The Supreme Court has long instructed that "[t]here must, of course, be a nexus . . . between the item to be seized and criminal behavior" in order for probable cause to exist for the issuance of a search warrant. *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967); *see also United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) ("there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue"); *United States v. Woodbury,* 511 F.3d 93, 97 (1st Cir. 2007) ("A warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched—the so-called 'nexus element.'").

Here, however, the objects of the search identified in the 2022 Application are wholly unsupported by the facts provided in its Affidavit. Specifically, the evidence sought included: "Digital imaging of office to include examination rooms, audio/video/photographic recording devices, scented bottles of lotion, records associated with patient/victim, A.G." *See* **Ex. B** (2022 Affidavit). There is no information contained anywhere in the Affidavit alleging or even remotely indicating any sort of digital imaging or recording devices had been used by Spiegel or would be contained in his office. As such, the Affidavit lacks the requisite nexus between the evidence

sought and the criminal conduct described, which precludes a finding of probable cause to support the warrant.

For example, in *Armstrong*, the court found the search warrant affidavit lacked probable cause because it failed to establish a sufficient nexus between the objects of the search, iPhones, and the crime being investigated, unlawful possession of firearms. *United States v. Armstrong*, No. 21-CR-228 (DWF/ECW), 2022 WL 17417901, at *12 (D. Minn. Sept. 2, 2022). The court explained,

> The Affidavits in this case contain no statements that Armstrong had posted photos of himself with a firearm on social media, had sent photos of himself with a firearm to any other person, had used a cell phone to obtain a firearm, had communicated with anyone about firearms using cell phones or the Internet, was a member of any gangs, had engaged in gang-related activity, or had engaged in any kind of coordinated activity with another person relating to firearms. . . . Under these circumstances, the Court find[s] the Affidavits did not establish a sufficient nexus between the iPhones and evidence of Armstrong's knowing possession of a firearm and "any other associated violence," and that the Affidavits did not establish probable cause.

*Id*. In other words, because the affidavit contained no factual support indicating that the suspected criminal conduct was connected to the objects of the search, the affidavit lacked probable cause. *See id*.; *see also United States v. Ramirez*, 180 F. Supp. 3d 491, 495 (W.D. Ky. 2016) (suppressing evidence obtained from a search warrant due to an insufficient nexus between the suspected drug crime and the object of the search, a cell phone). Likewise, here, there is no factual support contained in the 2022 Affidavit indicating that the criminal conduct suspected, child molestation, was connected to the objects of the search, digital imaging and recording devices. Therefore, the affidavit lacks probable cause. *See also United States v. Falso*, 544 F.3d 110, 124 (2d Cir. 2008) (finding, search warrant affidavit "fail[ed] to establish the requisite nexus of illegal activity to [defendant]" because there was no allegation that the defendant, who was suspected of child sexual abuse, was ever in a position to view or download child pornography).

Of the evidence described in the 2022 Affidavit, the only plausible connections to the underlying facts are A.G.'s records and "scented bottles of lotion", but even that evidence could not have been reasonably expected to still be found in Spiegel's office, given that A.G.'s statements were provided on "08-29-2022" describing conduct that supposedly occurred "[i]n the month of August 2021[,]" over a year prior. *See id*. As such, the information supporting the presence of that evidence was too stale to justify issuance of the search warrant alone. *See, e.g., United States v. Raymonda*, 780 F.3d 105 (2d Cir. 2015) (finding, information that the defendant visited a website containing child pornography nine months prior to the search warrant application was too stale to support a search of his computer); *United States v. Button*, 653 F.2d 319, 324 (8th Cir. 1981) (information provided to the affiant from an informant "over the past six months" was too stale).

In any case, the nature of the evidence sought, digital imaging and recording devices, indicates that the primary and true aim of the 2022 Search Warrant was to uncover evidence of child pornography, not child molestation. It specifically directs the investigators "to search the computers, cameras, storage devices, and electronic devises [*sic*] seized by you . . . for evidence of ownership and usage, files and graphic images ***depicting child pornography*** . . . ." *See* **Ex. A** (2022 Warrant) (emphasis added). Again, since there is no factual connection made in the Affidavit to the presence of child pornography in Spiegel's office, the Affidavit lacks probable cause.

*United States v. Hodson* is particularly instructive on this issue. There, the Sixth Circuit held that a search for child pornography was not supported by probable cause where the warrant affidavit was based on the defendant's online confession to an undercover officer that he had molested a seven-year-old. 543 F.3d 286, 292 (6th Cir. 2008). Specifically, the court found the affidavit lacking because it "established probable cause for one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography)."

11

*Id.* Of particular significance to the court was that the affidavit contained "no information whatsoever with regard to Hodson's engaging in any aspect of child pornography, or any basis for believing that individuals who engage in child molestation are likely also to possess child pornography." *Id*. at 289; *see Falso*, 544 F.3d at 124 (invalidating search warrant for child pornography that was based in part on the defendant's previous arrest for sexually abusing a minor); *United States v. Coreas*, 419 F.3d 151, 156 (2d Cir. 2005) (where affidavit's only evidence of child pornography was the defendant's acceptance of an e-group invitation, the court noted, "that does not remotely satisfy Fourth Amendment standards"); *see also United States v. Colbert*, 605 F.3d 573, 575 (8th Cir. 2010) (where affidavit alleged the defendant attempted to entice a minor by telling her "his apartment had movies and videos she would like to watch," search warrant for child pornography was supported by probable cause).

Such is precisely the case here. Despite the crime of child molestation named in the 2022 Application, the investigators sought evidence of child pornography without providing any support for the same, which is constitutionally impermissible. *See also Horton v. California*, 496 U.S. 128, 147 (1990) (Justice Brennan, *dissenting*) (noting, "if an officer enters a house pursuant to a warrant to search for evidence of one crime when he is really interested only in seizing evidence relating to another crime, for which he does not have a warrant, his search is 'pretextual' and the fruits of that search should be suppressed."); *see also, e.g.*, *State v. Kelsey,* 592 S.W.2d 509 (Mo. App. 1979) (evidence suppressed because officers, who had ample opportunity to obtain warrant relating to murder investigation, entered the premises instead pursuant to a warrant relating to a drug investigation, and searched only the hiding place of the murder weapon, rather than conducting a "top to bottom" search for drugs).

C.  Unreliability of Affidavit

"Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).

Here, the entirety of the 2022 Affidavit is a third-hand account of hearsay statements made by A.G. to a CAC Forensic Interviewer,[4] recounting events that supposedly took place over a *full year* before the statements were made. *See* **Ex. B** (2022 Affidavit). The Affidavit is silent as to whether the information A.G. provided was corroborated by law enforcement or any other independent source. *See id*. Rather, the affiant and the reviewing magistrate simply took A.G.'s statements at face value, despite the apparent multiple levels of hearsay and the lack of any showing of reliability. Accordingly, without more, A.G.'s statements cannot be deemed sufficiently reliable to give rise to probable cause.[5] *See Nolen*, 536 F.3d at 840.

Moreover, a heightened concern for the reliability of A.G.'s statements arises if the Court concludes the facts provided in the 2022 Affidavit are sufficient to infer that A.G. was a child. In that case, an even stronger showing of reliability is required. In fact, courts examining authority on this issue across federal circuits have consistently recognized that "***no federal court of appeals has ever found probable cause based on a child's allegations absent some other evidence to corroborate the child's story***." *Wesley v. Campbell*, 779 F.3d 421, 430 (6th Cir. 2015) (emphasis added); *Stoot v. City of Everett,* 582 F.3d 910, 919–20 (9th Cir. 2009) ("In cases involving very

---

[4] Even this assumes the affiant received the information directly from the CAC interviewer, which is unclear from the Affidavit. It is entirely possible that one or more additional levels of hearsay separated the statements from the Affidavit, even further diminishing their reliability, though a reviewing Magistrate has no way to tell.

[5] Tellingly, A.G.'s statements were reviewed by the Child Abuse and Neglect Board of the Missouri Children's Division at an administrative hearing, which found there was not a preponderance of evidence to establish that the allegations occurred. *See* **Ex. F** (Children's Division Ruling).

young child victims, the courts have repeatedly emphasized the need for some evidence in addition to the statements of the victim to corroborate the allegations and establish probable cause."); *United States v. Shaw,* 464 F.3d 615, 624 (6th Cir. 2006) (the court was "unaware of any situation" where the uncorroborated hearsay statements of a young child, standing alone, has been considered sufficient to establish probable cause); *Myers v. Morris,* 810 F.2d 1437, 1456 (8th Cir. 1987) ("In no case did an arrest occur on the basis of only one child's account"). This line of cases makes it clear: the statements of a child must be corroborated by some other evidence to give rise to probable cause, as children are inherently less reliable.[6]

As such, should this Court deem the 2022 Affidavit sufficient to raise the inference that A.G. was a child, the Court cannot likewise find the Affidavit is sufficient to establish probable cause, given the lack of *any* corroboration or otherwise for A.G.'s statements provided. Conversely, should the Court deem otherwise with respect to A.G.'s age, the Court cannot likewise find probable cause of child molestation existed to support the warrant's issuance for the reasons set forth above. In either case, probable cause is lacking.

Thus, because the 2022 Affidavit is facially deficient, the search of Spiegel's office on August 30, 2022 was invalid under the Fourth Amendment, entitling him to suppression of all evidence obtained directly from that search and derived from it. *See United States v. Grajeda*, 497 F.3d 879, 881–82 (8th Cir. 2007) ("Where the initial search is invalid, the fruit of that unlawful search must be suppressed").

### 2. Even if probable cause somehow exists on the face of the 2022 Affidavit, the search warrant is unlawful because it is overbroad in scope.

Under the Fourth Amendment's particularity requirement, "a search warrant must be

---

[6] *See* Diana Younts, *Evaluating and Admitting Expert Opinion Testimony in Child Sexual Abuse Prosecutions,* 41 Duke L.J. 691, 697 (1991) ("[S]tudies examining children's suggestibility have found children to be prone to conforming their stories to the beliefs of the questioning adult.").

sufficiently definite so as to enable the officer with the warrant to reasonably ascertain and identify the place to be searched and the objects to be seized." *United States v. Frederickson*, 846 F.2d 517, 519 (8th Cir. 1988). Additionally, particularity requires the warrant be sufficiently limited in scope and breadth so as to avoid "general, exploratory rummaging in a person's belongings[.]" *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). "The warrant's scope should not be 'broader than can be justified by the probable cause upon which the warrant is based.'" *United States v. Burkhow*, No. 19-CR-59-CJW-MAR, 2020 WL 589536, at *8 (N.D. Iowa Feb. 6, 2020) (quoting *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013)).

The 2022 Warrant authorized the search of virtually any and all data and files that could be stored on any computer or other electronic device contained in Spiegel's office, without limitation. As discussed above, the lack of any nexus between that information and the underlying conduct fails the Fourth Amendment's particularity requirement in and of itself. *See, e.g., Cassady v. Goering*, 567 F.3d 628, 636 (10th Cir. 2009) ("It is not enough that the warrant makes reference to a particular offense; the warrant must 'ensure[ ] that [the] search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.'").

Notwithstanding that, the failure to provide any limitation whatsoever on the scope of the search independently contravenes the particularity requirement. *See Payton*, 445 U.S. at 583; *United States v. Nieman*, 520 F.3d 834, 839 (8th Cir. 2008) (suggesting that a warrant must at least contain some "specific limitation" tailored to the items relevant to the charge). Such is especially the case where the privacy intrusion involves sensitive medical information of the countless patients Spiegel has treated over decades of practicing medicine. Under the 2022 Warrant, the magistrate provided investigators boundless access to the entirety of each of those patients' files,

which is constitutionally impermissible. *See, e.g., United States v. Abrams*, 615 F.2d 541, 543 (1st Cir. 1980) (finding search warrant for a doctor's office invalid for lack of particularity because it contained "no limitation as to time and there is no description as to what specific records are to be seized"); *see also United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) ("A general search of electronic data is an especially potent threat to privacy because hard drives and email accounts may be 'akin to a residence in terms of the scope and quantity of private information [they] may contain.'") (quoting *Galpin*, 720 F.3d at 445 (alternations in original)).

Thus, lacking any limitation to the scope of the materials covered by the search warrant, the 2022 Warrant is insufficiently particularized and, therefore, is unlawful.

## II.    THE AUGUST 2022 ARREST OF SPIEGEL WAS UNLAWFUL

**1.    Spiegel's arrest during the August 2022 search of his office was unlawful because it was conducted without an arrest warrant and at a private location where the officers were unlawfully located due to the defective search warrant.**

It is well-settled that "the warrantless arrest of an individual in a public place upon probable cause d[oes] not violate the Fourth Amendment." *United States v. Council*, 860 F.3d 604, 608 (8th Cir. 2017). However, there is a meaningful distinction when a warrantless arrest occurs in a private premises. *See Payton v. New York*, 445 U.S. 573, 587 (1980). For instance, generally, "officers may not enter a home to make an arrest without a warrant, even when they have probable cause." *Collins v. Virginia*, 584 U.S. 586, 595–96 (2018). "[A]n officer ***must have a lawful right of access*** in order to arrest a person in his home[.]" *Id*. (emphasis added). This applies equally to an individual's office or workplace, so long as he has a reasonable expectation of privacy therein. *See Payton*, 445 U.S. at 586-89; *Donovan v. Dewey*, 452 U.S. 594, 599, n.6 (1981) (noting that the "same restrictions" on a warrantless arrest in an individual's home pertain to commercial property); *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 354 (1977) (discussing that the Fourth

16

Amendment's distinction on warrantless seizures on private property apply to "even that owned by a corporation, situated on private premises to which access is not otherwise available for the seizing officer."); *see also United States v. Gooch*, 6 F.3d 673, 677–78 (9th Cir. 1993) ("a warrantless arrest *is* unconstitutional in a 'non-public' place, even when that place is not one's residence") (emphasis in original).

Spiegel's arrest was conducted without an arrest warrant at his office, where he maintains a reasonable expectation of privacy, especially as a practicing physician with highly sensitive and confidential medical information of his patients. *See O'Connor v. Ortega*, 480 U.S. 709, 719 (1987) (physician had a reasonable expectation of privacy in his office); *Zadeh v. Robinson*, 928 F.3d 457, 466 (5th Cir. 2019) ("in medical contexts, the expectation of privacy likely is heightened"). The officers would have to be lawfully located in his office in order to conduct an arrest therein without a warrant. *See Collins*, 584 U.S. at 595–96; *Payton*, 445 U.S. at 587. As they entered the premises under the authority of an invalid search warrant, the officers were not lawfully located there. *See Horton v. California*, 496 U.S. 128, 136 (1990). Thus, even if probable cause existed to arrest, the officers were required to obtain an arrest warrant before they could arrest him in his private property. *See, e.g.*, *Gooch*, 6 F.3d at 677–78 (warrantless arrest in a tent located on public property was unlawful). Because they did not, the arrest constitutes an unlawful seizure.

**2. Even if the August 2022 search warrant was valid, Spiegel's warrantless arrest was unlawful because it was conducted without probable cause or other lawful justification.**

"Probable cause for an arrest exists when the totality of circumstances demonstrates that the arresting officer personally knows or has been reliably informed of sufficient facts to warrant a belief that a crime has been committed and that the person to be arrested committed it." *United States v. Reinholz*, 245 F.3d 765, 778 (8th Cir. 2001).

17

For the same reasons set forth in Section I(1) above, the statements of A.G. alone were insufficient to give rise to probable cause for Spiegel's arrest on the crime of Child Molestation in the First Degree. *See, e.g., Myers,* 810 F.2d at 1456. Depending on the timing of the arrest relative to the search, the only other information available to the officers to corroborate the same was merely the presence of lotion in his office and the existence of A.G.'s records, which verified that she was a patient, but undermined her story because the medical records contained no indication that A.G. came in with her siblings anytime near the date she claimed this occurred on. The fact that A.G. was Spiegel's patient was likely an accepted fact by the investigators and does nothing to corroborate the conduct at issue. Moreover, the presence of a moisturizing lotion in a doctor's office should almost be expected, akin to a box of tissues or hand sanitizer, providing little corroboration, if any, here. Thus, without more, the arrest lacked probable cause. *See, e.g., Reinholz*, 245 F.3d at 777-778 (finding, officers lacked probable cause to arrest the defendant at his workplace "in connection with a lawful search warrant" because the officers "did not personally know or have reliable information to warrant a belief that [defendant] committed a crime").

Likewise, absent probable cause, the arrest also cannot be justified as a 24-hour hold authorized by Missouri statute. The Eighth Circuit is clear, "Missouri's twenty-hour hold statute does not provide any authority to arrest persons without a warrant and hold them in custody for twenty hours." *United States v. Oropesa*, 316 F.3d 762, 768 (8th Cir. 2003); *see also id*. (holding, "[e]ven if the arresting officer sought to arrest [defendant] pursuant to a twenty-hour hold, the officer still had to have probable cause to arrest [defendant] without an arrest warrant"); *United States v. Clarke,* 110 F.3d 612, 614 (8th Cir.1997) ("The Missouri statute, first of all, does not purport to give anyone a power to arrest. That statute is concerned not with the authority to arrest but with the rights of persons who have already been arrested.").

18

Thus, because the arrest was conducted without a warrant or probable cause on Spiegel's private property, where the officers were unlawfully located, Spiegel is entitled to suppression of all evidence obtained from the unlawful arrest, including the items obtained from the search incident to his arrest. *See New York v. Harris*, 495 U.S. 14, 19 (1990) (noting, even "indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality").

### III.    THE SUBSEQUENT WARRANTLESS SEIZURE OF SPIEGEL'S CELL PHONE WAS UNLAWFUL

As noted, Spiegel's cell phone was seized from his person during the execution of the 2022 Warrant. Given that the "Search Warrant Return and Inventory" report does not list his cell phone among the property seized from the search, *see* **Ex. C** (2022 Warrant Inventory), the phone was purportedly seized incident to his arrest that day, rather than pursuant to the 2022 Warrant.[7] As such, the scope of the officers' authority for the seizure was limited to the booking inventory justification for retaining it while Spiegel was held in custody. *See Fla. v. Royer*, 460 U.S. 491, 500 (1983) (when a warrantless seizure is justified by an exception to the warrant requirement, it "must be limited in scope to that which is justified by the particular purposes served by the exception"); *see United States v. Nevatt*, 960 F.3d 1015, 1020 (8th Cir. 2020) ("The purpose of an inventory search is to protect the owner's property while it remains in police custody, as well as to protect police against claims or disputes over lost or stolen property and from potential dangers."); *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011) (explaining, when officers act pursuant

---

[7] Also strongly indicating this is the fact that the officers felt the need to inform Spiegel of the subsequent seizure of his phone and sought his consent to search it, even though the search warrant clearly directed the officers to "search . . . electronic devises [sic] seized by you, including any files that are password protected or encrypted . . . ." **Ex. A** (2022 Warrant).

to the inventory exception, "the police are engaging in their community caretaking function—not their criminal investigatory function").

Accordingly, Spiegel's cell phone should have been returned to him upon his release from custody along with the rest of the inventoried property seized from his person, consistent with the presumable jail policy for doing so. However, instead, the investigators seized the phone from Spiegel again, without a warrant—which they had ample time to apply for during the 24-hour holding period. The investigators informed Spiegel of this new seizure when they gave him a ride to work immediately after his release:

> Detectives Cash and Paxton responded to St. Charles City jail and contacted Dr. Spiegel to advise him the case was taken under advisement. Detectives offered Spiegel a ride to DePaul Hospital which he accepted. ***Detectives informed Spiegel that we had seized his cell phone*** in which he inquired if Detectives were looking for "Child Porn". Spiegel informed Detectives that there was no child pornography on the phone and agreed to give consent to Detectives to search his cell phone.

Bates, 271 (emphasis added). Intuitively, it follows that this subsequent seizure must have been a separate, distinct act of physically taking the phone from Spiegel's other inventoried personal property by the Bridgeton investigators, who "responded to St. Charles City jail" upon Spiegel's release. Otherwise, there would be no need for the investigators to "inform[] Spiegel that [they] had seized his cell phone[.]"

Regardless, by taking or retaining possession of the phone, the officers exceeded the scope of the justification they had for possessing such inventoried property while Spiegel was in custody, as the officers were no longer protecting Spiegel's property or holding it pursuant to internal jail policies. Rather, they were acting in their capacity as criminal investigators to uncover evidence, thereby exceeding the scope of their Fourth Amendment authorization. *See Taylor*, 636 F.3d at 464; *Florida v. Wells,* 495 U.S. 1, 4 (1990) (noting, the inventory exception may not be used as "a ruse for a general rummaging in order to discover incriminating evidence"). Thus, lacking any

20

applicable exception to the warrant requirement, the subsequent seizure of Spiegel's cell phone
was unlawful, entitling him to suppression of all evidence obtained from the illegal seizure.

IV.    **THE APRIL 2023 SEARCH WAS UNLAWFUL**

1.    **The evidence and statements obtained from the April 2023 search of Spiegel's
office should be suppressed as poisonous fruit of the unlawful August 2022
search, unlawful arrest, and unlawful cell phone seizure.**

"The exclusionary rule 'reaches not only primary evidence obtained as a direct result of an
illegal search or seizure ... but also evidence later discovered and found to be derivative of an
illegality or fruit of the poisonous tree.'" *United States v. Swope*, 542 F.3d 609, 613 (8th Cir. 2008)
(quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)). Moreover, "[a] warrant obtained after
an illegal search is not an independent source if either of the following are true: 'if the agents'
decision to seek the warrant was prompted by what they had seen during the initial entry,' and 'if
information obtained during that entry was presented to the Magistrate and affected his decision
to issue the warrant.'" *Id.* (quoting *Murray v. United States,* 487 U.S. 533, 542 (1988)).

To obtain the 2023 Warrant, a DEA investigator authored a fifty-six page affidavit to
establish probable cause for the search. *See* **Ex. E** (2023 Affidavit). The supporting information
used therein, however, is comprised almost exclusively of information law enforcement illegally
obtained directly from, or closely derived from, the foregoing unlawful searches and seizures.

Specifically, virtually the entirety of the "Probable Cause" section, pages 15-44 of the 2023
Affidavit, describes text messages exchanged between Spiegel and his patients, which the officers
obtained from Spiegel's phone after illegally seizing it. The only extraneous information not
directly from Spiegel's phone is information the officers obtained to verify the content of the texts,

such as interviews of those patients[8] and pharmacy prescription records.[9] *See id*. As such, the investigators were plainly motivated by the information illegally obtained from Spiegel's cell phone to obtain the 2023 Warrant, and if such information was not contained in the 2023 Affidavit, the magistrate would not have issued the warrant, foreclosing any issue as to whether such affected the magistrate's decision to do so.

Thus, the evidence obtained from the 2023 Warrant constitutes poisonous fruit of the unlawful searches and seizures from which the investigators obtained the information on Spiegel's phone. Spiegel is, therefore, entitled to suppression of all evidence obtained from the 2023 Warrant and its execution, including the statements he made to investigators during the search. *See United States v. Yousif*, 308 F.3d 820, 832 (8th Cir. 2002) ("Verbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search.").

### 2. The April 2023 search was unlawful because the warrant was overly broad in scope.

Similar to the 2022 Warrant, the 2023 Warrant authorized unrestricted access to "[a]ll patient files in their entirety," as well as virtually any and everything that could conceivably be found in Spiegel's office or stored on any devices therein. *See* **Ex. G** (2023 Warrant). The only limitation provided by the warrant is for records older than January 1, 2016. *Id*. Nevertheless, the warrant still authorized unfettered access to the medical information of any and all patients seen by Spiegel over the preceding seven years, "without limitation." *See id*. That is, the highly sensitive, private medical records of potentially thousands of patients—adult men, women, and children alike—all was subject to inspection and seizure by investigators under the broad language

---

[8] Officers only became aware of these patients' identities from the texts.

[9] The contents of the texts prompted officers to obtain these prescription records of those individuals.

of the 2023 Warrant.

Lacking any specificity as to the records to be searched for within patient files "in their entirety," which specific patients' files to search, or even which class of patients to search for, the warrant's general authorization to access all of such medical records cannot meet the Fourth Amendment's particularity requirement. *See, e.g., Abrams*, 615 F.2d at 543; *see also Vonder AHE v. Howland*, 508 F.2d 364 (9th Cir. 1975) (warrant authorizing seizure of all business records invalid because of its generality); *see also Zadeh*, 928 F.3d at 466 ("In considering the reasonable expectation of privacy, we also consider the sensitive nature of medical records.").

For largely the same reasons discussed above with respect to the 2022 Warrant, the 2023 Warrant is unconstitutionally overbroad, rendering the April 2023 search unlawful.

## V.  SPIEGEL'S CONSENT DID NOT CURE THE TAINT OF THE FOURTH AMENDMENT VIOLATIONS

As explained by the Eighth Circuit,

> The exclusionary rule extends to evidence later discovered and found to be derivative of an illegality or "fruit of the poisonous tree." If the defendant establishes a nexus between a constitutional violation and the discovery of evidence sought to be excluded, the government must show the challenged evidence did not arise by exploitation of that illegality ... [but] instead by means sufficiently distinguishable to be purged of the primary taint. The illegality must be at least a but-for cause of obtaining the evidence [to warrant suppression].

*United States v. Tuton*, 893 F.3d 562, 568 (8th Cir. 2018) (internal citations and quotations omitted), *cert. denied*, ⸺ U.S. ⸺, 139 S. Ct. 1192 (2019).

**1.  Spiegel's coerced consent was not voluntarily given.**

An individual's consent to a search must be voluntary in order for the search to be justified on that basis without a warrant. *Ohio v. Robinette*, 519 U.S. 33, 40 (1996). As such, the threshold question considered in determining whether a consent cures the taint of a previous Fourth Amendment violation is whether that consent was given voluntarily. *See Brown v. Illinois*, 422

23

U.S. 590, 602 (1975). Consent is voluntary "if it was 'the product of an essentially free and unconstrained choice by its maker,' rather than 'the product of duress or coercion, express or implied.'" *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990) (internal citations omitted).

Here, the consent was provided while inside a police vehicle almost immediately after Spiegel—an esteemed medical professional with no criminal history, now facing heinous allegations—had just been released from spending 24 hours in jail. *See* Bates, 271. The investigators had just informed Spiegel his case was being "taken under advisement" and that his cell phone had been seized. *Id*. The power dynamic was clear: Spiegel was in a highly vulnerable position relative to the investigators, weighing strongly against voluntariness. *See Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) (vulnerable subjective state of the person who consents is a factor considered to determine voluntariness of the consent).

The investigators exploited this vulnerability and coerced Spiegel into consenting by leading him to believe the search was inevitable, regardless of whether he consented or not. According to the 2023 Affidavit, "[d]uring the car ride" from jail, the investigators "asked [Spiegel] if he would consent to a search of his iPhone, thereby eliminating the need to obtain a search warrant and expediting its return to Dr. Spiegel." **Ex. E** (2023 Affidavit) at p.14, ¶ 34. To be sure, the investigators did not use physical force against Spiegel or threaten him, but coercion comes in many forms, and the investigators misled Spiegel to falsely believe they had a right to keep his phone and it made no difference whether he hastened the process by consenting now. This coercion rendered his consent involuntary. *See Yousif*, 308 F.3d at 831 (consent held not voluntary where officers told the defendant that "if [he] refused to consent to the search, the officers would search the vehicle anyway, on the basis of probable cause"); *United States v. Morgan,* 270 F.3d 625, 631 (8th Cir. 2001) (consent held not voluntary where trooper asked for consent to search a

van, and the driver said "go ahead" after the trooper stated he would walk a drug dog around the van if consent were refused), *overruled on other grounds* by *Rodriguez v. United States*, 575 U.S. 348, 353 (2015).

Thus, because Spiegel's consent was the product of coercion and exploitation, it was not given voluntarily and cannot purge the taint of the police's Fourth Amendment violations.

### 2. Even if voluntary, Spiegel's consent did not cure the taint of the Fourth Amendment violations.

An individual's "voluntary consent to search, which was preceded by an illegal police action does not automatically purge the taint of an illegal [seizure]. Rather, to purge the taint, *i.e.* prevent the application of the 'fruit of the poisonous tree' doctrine, the government bears the burden of demonstrating that the voluntary consent was an independent, lawful cause of the search." *United States v. Alvarez-Manzo*, 570 F.3d 1070, 1077 (8th Cir. 2009) (internal citations and quotations omitted). In such cases, the reviewing court determines whether this standard is met by evaluating three factors: "(1) the temporal proximity between the Fourth Amendment violation and the grant of consent to search; (2) the presence of any intervening circumstances; and (3) the purpose and flagrancy of the officer's Fourth Amendment violation." *Id*.

In essence, the aim is to "evaluate[] the causal link between the government's unlawful act and the discovery of evidence[.]" *Utah v. Strieff*, 579 U.S. 232, 238 (2016). Here, there is a direct causal link between every illegality and Spiegel's consent.

### A. Temporal Proximity

"The first factor, temporal proximity between the initially unlawful [seizure] and the search, favors suppressing the evidence" when temporally close. *See Strieff*, 759 U.S. at 239. The Supreme Court has consistently "declined to find that this factor favors attenuation unless 'substantial time' elapses between an unlawful act and when the evidence is obtained." *Id*.

Spiegel's consent to search his cell phone was only 24 hours removed from the unlawful search and unlawful arrest, and, most tellingly, was only moments removed from the subsequent unlawful seizure of his cell phone. As noted, Spiegel had just been released from custody and was in the officers' vehicle getting a ride directly from jail when he supposedly consented—almost contemporaneous with when "Detectives informed Spiegel that [they] had seized his cell phone[.]" Bates, 271. It is difficult to imagine a more temporally close scenario than where the investigators seek an individual's consent to search the very thing they had just unlawfully seized from him moments prior. *See, e.g., Alvarez-Manzo*, 570 F.3d at 1077 (suppressing evidence found in the defendant's wallet where the police illegally seized it from his pocket and then obtained his consent to search it during the same exchange, "[b]ecause the government ha[d] failed to demonstrate that the causal connection between the illegal seizures and [defendant]'s consent was broken"). The causal relationship is plainly apparent: the investigators would not have sought or needed Spiegel's consent to search his cell phone had they not just illegally seized it from his inventoried property.

Nevertheless, even if this Court were to find the subsequent warrantless seizure of Spiegel's cell phone was somehow lawful, his consent to search it was still closely preceded by the previous illegalities, occurring approximately 24 hours prior to his consent. Again, Spiegel had just been released from custody after spending a full 24 hours in county jail by virtue of that illegal conduct, committed at the hands of the same investigators that sought and obtained his consent. As such, Spiegel's consent and the police's illegal conduct were heavily intertwined with one another, establishing not only a clear "but for" relationship (*i.e.*, Spiegel would not have been in that position "but for" the unlawful search and unlawful arrest), but also a strong causal relationship, considering the vulnerable position he was placed in under the circumstances created by the Fourth Amendment violations, as discussed above.

26

There was certainly not a "substantial time" passage between the consent and illegality sufficient to break the causal connection between the two, as is required to favor attenuation under this factor. *See Strieff*, 759 U.S. at 239; *see, e.g.*, *United States v. Bocharnikov*, 966 F.3d 1000, 1004-05 (9th Cir. 2020) (defendant's statements not sufficiently attenuated from illegal detention and seizure eight months before, where agent referred to initial illegality); *United States v. Shetler*, 665 F.3d 1150, 1159 (9th Cir. 2011) ("Although the 36 hours that passed between the illegal search and Shetler's confession at the DEA office is a relatively long time, the temporal proximity factor does not weigh in the government's favor").

Thus, the close temporal proximity between every illegality and Spiegel's consent favors exclusion of the evidence and statements at issue.

### B. Intervening Circumstances

"Under the second *Brown* factor, the presence of any intervening circumstances, we recognize that an intervening circumstance between the Fourth Amendment violation and the defendant's consent indicates that the consent was made of the defendant's free will and 'that the [officer] was not attempting to exploit an illegal situation.'" *United States v. Barnum*, 564 F.3d 964, 972 (8th Cir. 2009).

As discussed above with regard to voluntariness, the relevant intervening circumstances here were the police's exploitations of their illegal conduct to coerce Spiegel into consenting, misleading him to believe the search was inevitable and that his consent would only hasten the return of his property, when, in actuality, had he not given consent, the police would not have been legally permitted to keep his phone while applying for a warrant. Such exploitation strongly favors suppression under this analysis. *See id.*; *see also United States v. Roubideaux*, No. 3:23-CR-30029-RAL, 2023 WL 5960844, at *5 (D.S.D. Aug. 29, 2023) (explaining, "when a suspect is confronted

with incriminating evidence police have unlawfully seized, there has been an exploitation of that illegality if they subsequently interrogate him about the evidence or the crime to which it relates"); *see also United States v. Timmann*, 741 F.3d 1170, 1184 (11th Cir. 2013) (when police confronted defendant with evidence they obtained through unlawful search of apartment, his "admissions were the direct result of the officers' 'exploitation' of the unlawful search").

Even if the investigators "reminded Dr. Spiegel of his rights" before obtaining the consent, *see* **Ex. E** (2023 Affidavit) at p.14, ¶ 34, such did not affect the circumstances as he believed them to be—an inevitable search one way or the other. *Brown*, 422 U.S. at 602-03 (*Miranda* warnings not the "cure-all" for Fourth Amendment violations); Wayne R. LaFave, *Search and Seizure*, § 11.4(c) (6th ed. & Oct. 2022 Update) ("[I]t is crystal clear that giving the defendant the *Miranda* warnings will not break the causal chain between an illegal search and a subsequent confession.... The essential fact ... is that these warnings do not advise him whether the evidence he is confronted with is unlawfully obtained or whether it will be admissible at trial."). As such, even a full reading of Spiegel's *Miranda* rights prior to his consent would not have appropriately advised him of the implications of his consent, much less suffice to "break the causal chain" and automatically render his consent independent and "sufficiently distinguishable" from the constitutional violations. *See id.*; *Tuton*, 893 F.3d at 568. Accordingly, the officers "remind[ing] Dr. Spiegel of his rights" did not purge the taint of their Fourth Amendment violations. *See Brown*, 422 U.S. at 604 (finding, *Miranda* warnings, by themselves, were insufficient to purge the taint of illegal arrest); *see also id*. at 602 (explaining, "If *Miranda* warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted.").

Thus, the intervening circumstances likewise favor suppression.

C.  <u>Purpose and Flagrancy</u>

The third factor, "the purpose and flagrancy of the official misconduct," favors exclusion of the evidence when the police misconduct is "purposeful or flagrant." *Strieff*, 759 U.S. at 241. Regardless of whether the misconduct here was purposeful at any point in the investigation, which it almost certainly was, the conduct was at the very least flagrant by the sheer extent of the Fourth Amendment violations that occurred.

Law enforcement violated Spiegel's rights at virtually every step of this investigation. First, Det. Cash authored the wholly defective 2022 Affidavit, seeking authorization to search for child pornography without any support for that crime, and using only the false allegations of a child witness[10] as his support for the crime of child molestation. Next, the investigators executed the clearly insufficient 2022 Warrant, which was not only based on highly questionable information, but authorized an impermissibly broad search for countless, highly sensitive patient medical records, most of which belonged to children, without any limitation in scope or breadth. Then, during that search, the officers elected to place Spiegel under arrest at his private office, without first obtaining an arrest warrant, based on essentially the same uncorroborated information stated in the 2022 Affidavit. Perhaps most flagrant of all, the Bridgeton investigators then waited for Spiegel to be released from the 24-hour hold (during which they did not apply for a search warrant or seek Spiegel's consent to search his phone), traveled to the jail he was released from to give him a ride to work, seized the phone from Spiegel's inventoried property, and then coerced him into providing consent.

*All* three factors favor exclusion of the evidence found on Spiegel's cell phone despite his consent, so the exclusionary rule applies, requiring suppression of all evidence obtained therefrom,

---

[10] *See supra*, note 5.

29

including the poisonous fruits of such evidence. *See, e.g., Alvarez-Manzo*, 570 F.3d at 1074, 1077 (suppressing evidence obtained from a search warrant that was issued after defendant's wallet was illegally seized and then searched with the defendant's consent, where the officer cited the evidence found from the consent search in the warrant affidavit).

**<u>CONCLUSION</u>**

For the foregoing reasons, Spiegel requests this Court suppress the evidence obtained from the unlawful search of his office in August 2022, his unlawful arrest occurring during the same, the unlawful seizure of his cell phone following his release from custody on the 24-hour hold, and the evidence obtained from the April 2023 search, including his statements made during the search, because said evidence was obtained in violation of his right to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution.


Respectfully submitted,

ROSENBLUM, SCHWARTZ, FRY & JOHNSON, P.C.


By:    /s/ *T.J. Matthes*
       T.J. MATTHES, #67563MO
       JEFF B. BECKER, #74560MO
       Attorney for Defendant
       120 South Central Avenue, Suite 130
       Clayton, Missouri 63105
       (314) 862-4332/Facsimile 862-8050
       tmatthes@rsfjlaw.com
       jbecker@rsfjlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 2, 2025, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system.